**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| LORI DUNN, | |
| Plaintiff, | 2:12–cv–01660–GMN–VCF |
| vs. | **<u>ORDER</u>** |
| WAL-MART STORES, INC., | |
| Defendant. | |

Before the court is Defendant Wal-Mart's Motion for Sanctions (#37[1]). Plaintiff Lori Dunn filed an opposition and cross-motion for sanctions (#41). Wal-Mart filed a reply to Dunn's opposition (#42) and an opposition to Dunn's cross-motion (#43). Dunn did not file a reply.

## BACKGROUND

The matter before the court arises out of Plaintiff Lori Dunn's slip-and-fall at a Wal-Mart Store in Las Vegas, Nevada. (Compl. (#1) at 1). The motion before the court, however, concerns allegedly sanctionable conduct by both Plaintiff's counsel and Defense's counsel during Plaintiff's two Rule 30(b)(6) depositions of Wal-Mart's corporate deponents. (*See generally* Def.'s Mot. (#37) at 1–17); (*see also* Pl.'s Mot. (#41) at 1–16). One of the depositions lasted eight-and-half hours. (*Id.*) Both depositions elicited inappropriate questions, objections, and remarks from counsel, which the court declines to recount here.

---

[1] Parenthetical citations refer to the court's docket.

1

**LEGAL STANDARD**

The guiding premise of the Federal Rules of Civil Procedure directs attorneys and courts "to secure the just, speedy, and inexpensive determination of every action and proceeding. *See* FED. R. CIV. P. 1. Rule 30 implements Rule 1's goals by prescribing how attorneys should behave during depositions. The Rule provides that "examination and cross-examination of a deponent proceed as they would at trial." FED. R. CIV. P. 30(c)(1). Two things are implicit in the Rule 30's command that examination must "proceed as [it] would at trial." First, attorneys must follow the same procedures as they would at trial. *See* Advisory Committee Notes, 1993 Amendments (discussing direct examination, cross examination, and objections). Second, attorneys must conduct themselves as they would at trial. *Id*. ("[C]ounsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer.").

Conduct unbecoming a member of the bar is a serious concern. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2113 n. 19 (discussing Rule 30 and citing *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007). If, at a deposition, an attorney fails to proceed as he or she would at trial, Rule 30(d)(2) provides that, "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2).

The plain language of Rule 30(d)(2) indicates that the court's inquiry is twofold. First, the court must determine whether a person's behavior has impeded, delayed, or frustrated the fair examination of the deponent. *See* FED. R. CIV. P. 30(d)(2). Second, the court must "impose an appropriate sanction." *Id*. The Ninth Circuit provides District Courts with wide discretion to fashion "an appropriate sanction." *Yeti by Molly, Ltd. v. Deckers*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976). The 1970 Advisory Committee's Notes to Rule 30(d)(2) state that the expenses incurred in relation to a Rule 30(d) motion triggers Rule 37(a)'s cost-payment provisions.

**DISCUSSION**

Because the motions before the court concern conduct that occurred during two depositions, the court begins its analysis by (1) reviewing the importance of depositions in modern litigation and (2) the central role that an attorney's credibility plays in conducting depositions and filing motions and papers with the court. These discussions provide the necessary context for addressing counsels' alleged behavior and the parties' motions for sanctions. Following these discussions, the court will address the merits of the parties' motions.

**I.    The Importance of Depositions in the American System of Justice**

98.8% of all civil cases filed in the United States District Courts are settled before trial. *See* Admin. Office of the U.S. Courts, *Judicial Business of the U.S. Courts: 2012*, Table C-4A (stating that 1.2% of all civil cases filed in federal court reach trial), http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2012/appendices/C04ASep12.pdf. This means that the process of fact finding that traditionally occurred at trial before a judge and jury has been displaced by less formal discovery procedures, like dispositions. As a result of the legal system's widespread reliance on depositions, the way attorneys behave during depositions impacts how justice is administered in the United States 98.8% of the time.

Federal Rule of Civil Procedure 30 requires depositions to "proceed as they would at trial." FED. R. CIV. P. 30(c)(1). This Rule, like many of the Federal Rules, was designed to be ***self-executing***. *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Pa. 2008). This means that attorneys are immediately bound by operation of law to depose witnesses "as they would at trial" without judicial assistance, oversight, or intervention. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining self-executing taking effect immediately); MERRIAM-WEBSTER (10th ed. 1998) (defining self-executing as

3

taking effect immediately). Attorneys are, therefore, expected to police their own behavior and examination tactics during depositions.

Sometimes this proves too difficult. *See, e.g.*, *Luangisa v. Interface Operations*, No. 11–cv–951, 2011 WL 6029880, at *6 (D. Nev. Dec. 5, 2011) (observing that there is a "wealth of case law addressing improper conduct during depositions."). The cause of the difficulty is often blamed on the fact that attorneys are bound, on the one hand, to zealously represent their clients and required, on the other hand, to conduct themselves as officers of the court. *Id.*; *see also* ABA MODEL RULES OF PROF'L CONDUCT, Preamble (2004). When the inevitable occurs, and two attorneys present differing opinions regarding the propriety of a deposition tactic, some attorneys mistakenly elevate their duty to zealously represent their clients above their duty to conduct themselves as officers of the court. Proceedings, then, devolve, personal attacks ensue, and—as here—a web of finger pointing results. (*See generally*, *e.g.*, Def.'s Mot. (#37) at Exhibit A, Depo. of Jarrod Brademan).

When the court is enlisted to resolve the dispute, motion practice may exacerbate the problem. If, as here, the mistake continues and the attorney drafts briefs as a zealous advocate, and not an officer of the court, the judge is presented with motions and papers that are laced with jabs and *ad hominem* attacks. *See, e.g.*, *Luangisa*, 2011 WL 6029880, at *6 (noting a similar problem); (*see also* Def.'s Mot. (#37) at 8:14–15 ("Plaintiff's counsel  started the deposition . . . by exhibiting child-like behavior, including eye-rolling, laughing at the witness' answers, and scoffing.")).

The court's duty to examine the record is, then, clouded by two layers of nonsense. The first layer is the parties' motions and papers, which purport to objectively analyze violations of law (*i.e.*, the Federal Rules of Civil Procedure) that allegedly occurred during the deposition. The second layer is the deposition transcript itself, which contains inappropriate conduct. These layers impede Rule 1's

4

command "to secure the just, speedy, and inexpensive determination of every action and proceeding. FED. R. CIV. P. 1. This problem can be cured in one of two ways.

The court, in turn, is presented with a choice. It may admonish the parties, impose sanctions, and hope the problem disappears. Alternatively, the court may offer instruction and attempt to address the root of the problem at hand.

## II.     Credibility Binds Counsel's Roles as Zealous Advocate & Officer of the Court

The court chooses the latter option, beginning clarifying counsel's role as both a zealous advocate and an officer of the court. The point of the discussion is to instruct counsel for their own benefit, and not to embarrass or admonish the parties present.

The Rules of Professional Conduct require attorneys to be both zealous advocates and officers of the court. *See, e.g.*, ABA MODEL RULES OF PROF'L CONDUCT Preamble (2004). Attorneys sometimes view these roles as opposed. This is a mistake. An attorney's backbone is her credibility. Good attorneys are credible attorneys because they simultaneously advocate their client's interests with zeal while presenting arguments as an officer of the court who respects rules of law and decorum.[2] When, however, an attorney elevates her duty to zealously represent her client above her duty to conduct herself as an officer of the court, her credibility suffers. A zealous advocate who disregards her role as an officer of the court becomes unreliable and prone to making exaggerated arguments, which the court regards with skepticism. When this happens, the client's case weakens. If this continues, a meritorious case may become a compromised case. The result is clear. An attorney's desire to zealously represent her client can undermine the attorney's ability to effectively represent her client.

---

[2] As discussed above, Rule 30 contains both rules of law and rules of decorum. *See* FED. R. CIV. P. 30(c), Advisory Committee Notes, 1993 Amendments (discussing the procedures for depositions and that "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer.").

In the motions before the court, both sides have presented presumptively meritorious arguments. The credibility of these arguments, however, is tainted because counsel mistakenly prioritize zealous representation over counsels' duty to conduct themselves as officers of the court. For example, Defense counsel's motion alleges that Plaintiff's counsel "started the deposition . . . by exhibiting child-like behavior, including eye-rolling, laughing at the witness' answers, and scoffing." (Def.'s Mot. (#37) at 8:14–15). These allegations can only be regarded with skepticism because the deposition transcripts did not—and could not have—captured eye-rolling, laughing, or scoffing.

Defense counsel further alleges that Plaintiff's counsel violated Rule 30's prohibition against "frustrat[ing] the fair examination of the deponent" because Plaintiff's counsel sarcastically responded to an objection by asking Defense counsel: "Are you a tone expert, a human tone expert?" (*Id.* at Exhibit A, 73:16–17). Standing alone, this remark is inappropriate because this is not how Plaintiff's counsel would act "in the presence of a judicial officer." FED. R. CIV. P. 30(c), Advisory Committee Notes, 1993 Amendments. However, the portion of the transcript which Defense counsel cites to show that Plaintiff's counsel did, in fact, make this remark contains statements by Defense counsel that are equally inappropriate. (*See id.* at Exhibit A, 73:7–8, 18–19) (bantering and stating that Plaintiff's counsel's argumentative "nature" is not allowed and then engaging in name calling by implying that Plaintiff's counsel is not acting like "a professional."). As a result of Defense counsel's statements during the deposition, her motion for sanctions suffers from a lack of credibility.

The court does not mean to unfairly target Defense counsel. Plaintiff's counsel's filings are equally problematic. The premise of Plaintiff's counsel's opposition to Defense counsel's motion for sanctions is that Defense counsel moved for sanctions because she "simply doesn't like the testimony elicited." (Pl.'s Opp'n (#41) at 5:2–3). This is clearly not the case. The deposition transcripts before the court contain numerous remarks that are inappropriate and have no bearing on admissible testimony. For

6

instance, Plaintiff's counsel stated: (1) "Are you a tone expert, a human tone expert?" (Def.'s Mot. (#37) Exhibit A at 73:16–17); (2) "Are you [*i.e.*, the witness] feeling threatened or harassed? [ . . . ] You seem like a capable man of speaking up if I'm harassing you, so please do if I harass you, okay?" (*id.*, Exhibit A at 75:3, 76:3–5); and (3) "I'm going to keep asking [the question] until I get the answer I need. [ . . . ] I don't care about your client's time and money"[3] (*id.*, Exhibit B at 87:12–13, 100:16–17).

These remarks are not presented to embarrass counsel. The court cites these statements to demonstrate how elevating zealous advocacy above counsel's role as an officer of the court damages counsel's credibility. If attorneys focused more on their credibility's value, and less on zealous advocacy, they would become better advocates and improve the atmosphere of the deposition, where the majority of fact finding occurs in the United States.

Therefore, as discussed in more detail below, the court denies both motions for sanctions. In doing so, the court exercises its leniency to provide counsel with an opportunity to pause, recalibrate, and shift their energy to productively advancing this case in a manner befitting of their professional reputations. *See, e.g.*, *Luangisa*, 2011 WL 6029880, at *6 (offering the same advice).

**III.     The Parties' Motions for Sanctions Under Rule 30**

Having addressed the importance of depositions in the administration of justice, and how an attorney's credibility relates to her roles as a zealous advocate and an officer of the court, the court now turns to the merits of the parties' motions. Both parties argue that the other's conduct is sanctionable. The court, however, refrains from imposing sanctions for two reasons.

---

[3] Although it is unclear from the record, Plaintiff's counsel allegedly asked this question approximately twenty times. If true this is a clear violation of Rule 1 and Rule 30. *See* FED. R. CIV. P. 30, Advisory Committee Notes, 1993 Amendments (stating that repeatedly asking the same question or making the same objection is sanctionable).

First, as the Honorable as the Honorable C.W. Hoffman, Jr. observed in a similar context, "[t]he process of distilling the issues presented in a motion is made more difficult when, as here, the entire record is clouded with pointless *ad hominem* attacks between counsel." *Luangisa*, 2011 WL 6029880, at *6. The court cannot determine which party's arguments should prevail because the parties' attorneys have frustrated the court's review.

Second, the court will not impose sanctions because neither party has satisfied its burden. To paraphrase the Supreme Court, the imposition of sanctions requires more than an unadorned opposing-counsel-unlawfully-harmed-me accusation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twomby*, 550 U.S. 544, 555 (2007)). This, however, is essentially what the parties have offered. For instance, Defense counsel's motion complains that Plaintiff's counsel asked the same question twenty-five times. (Def.'s Mot. (#37) at 8:3–7). To support this claim, she cites various points in the deposition. (*Id.*) Defense counsel, however, does not provide the court with sufficient background information regarding Plaintiff's counsel's questions or Wal-Mart's policies to understand how a question regarding a cashier's inspection is identical to a question regarding Wal-Mart's "Customer Accident Investigation & Reporting Procedures" or a question regarding Wal-Mart's "MAPMs." The court will not sift through 350 pages of two depositions to answer this question. *See Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994) ("District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits.").

The imposition of sanctions requires more. Under Rule 30(d)(2), the moving party's burden is twofold. First, the movant must identify language or behavior that impeded, delayed, or frustrated the fair examination of the deponent. *See* FED. R. CIV. P. 30(d)(2). When making this inquiry, the court will look to: (1) the specific language used (*e.g.*, use of offensive words or inappropriate tones); the conduct of the parties (*e.g.*, excessive objections or speaking objections); and (3) the length of the deposition.

Second, the movant must identify "an appropriate sanction." *Id*. The Ninth Circuit provides District Courts with wide discretion to fashion "an appropriate sanction." *Yeti by Molly, Ltd. v. Deckers*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976). The court will not engage in an open-end inquiry regarding what an appropriate sanction is without input from counsel.

The Ninth Circuit has advised that the keystone to "an appropriate sanction" is "justice." *Valley Engineers, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051,1056 (9th Cir.1998), cert. denied, 526 U.S. 1064, 119 S.Ct. 1455, 143 L.Ed.2d 542 (1999). Within the context sanctions, "justice" means at least three things. First, the sanction must be proportional to the claimed violation. *See, e.g.*, *Rice v. City of Chicago*, 333 F.3d 780 (7th Cir. 2003) (stating that sanctions should be proportional to the alleged violation). Second, sanctions must be specifically related to each alleged violation. *See, e.g.*, *Ins. Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 707 (1982) (stating that sanctions should be "specifically related" to the alleged violation); *Klein v. Stahl, GMHB & Co. Maschinefabrik*, 185 F.3d 98 (3d Cir.1999) (stating that sanctions should be narrowly tailored to the alleged violation).[4] Third, sanctions must "achieve the orderly and expeditious disposition of cases." *Chambers v. Nasco, Inc*., 501 U.S. 32, 43 (1991).

Neither party has satisfied this burden. Defense counsel moves the court to strike both depositions in their entirety. (Def.'s Mot. (#37) at 17:15–17). This is overbroad and not proportional or

---

[4] *See also, e.g.*, *Biovail Labs., Inc. v. Anchen Pharms., Inc*., 233 F.R.D. 648, 654 (C.D. Cal. 2006) (requiring payment of costs and attorney's fees incurred "in preparing this discovery motion, as well as . . . costs incurred in the first deposition" and also "costs attendant to resetting Dr. Seth's deposition, including travel costs for defendant's counsel"); *Silva v. TEKsystems, Inc*. No. 12–CV–05347–LHK, 2013 WL 3939500 (N.D. Cal. July 25, 2013) (striking deposition transcripts in their entirety because plaintiff's misconduct denied defendants an opportunity to prepare for the depositions); *Plump v. Kraft Foods N. Am., Inc*., No. 02-7754, 2003 WL 23019166, at *1 (N.D. Ill. Dec. 23, 2003) (requiring plaintiff to "pay the costs and fees incurred by defendant . . . in preparing, filing and arguing [the] Motion for Sanctions . . . and in taking the second session of [plaintiff's] deposition"); *Morales v. Zondo, Inc*., 204 F.R.D. 50, 57–58 (S.D.N.Y. 2001) (requiring payment of "the transcript cost of [the] deposition," "[counsel]'s normal hourly rate multiplied by the number of hours during which he questioned [the deponent]," and "$1,500 to the Clerk of the Court.").

narrowly tailored. By contrast, Plaintiff's counsel moves the court to impose sanctions without requesting any specific sanction whatsoever. (*See* Pl.'s Mot. (#41) at 11–16). As a result, Plaintiff's counsel has failed to identify proportional or narrowly tailored sanctions.

In sum, the parties' motions are denied because (1) the parties' filings frustrated the court's review and (2) neither party satisfied its burden under Rule 30. The parties are granted leave to re-file appropriate motions for sanctions. In the event that the parties choose to re-file motions for sanctions, the motions are due by November 22, 2013. Oppositions will be due December 1, 2013. The court will not consider reply briefs.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendant Wal-Mart's Motion for Sanctions (#37) is DENIED.

IT IS FURTHER ORDERED that Plaintiff Lori Dunn's cross-motion for sanctions (#41) is DENIED.

IT IS SO ORDERED.

DATED this 1st day of November, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE